ALFREDO MARTINEZ RIQUENE,

        Petitioner,

vs.                             Case No.:    3:15-cv-299-J-34PDB
                                                       3:10-cr-227-J-34PDB

UNITED STATES OF AMERICA,

        Respondent.

_____/

## ORDER

      This case is before the Court on Petitioner Alfredo Martinez Riquene's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Civ. Doc. 1, Motion to Vacate).[1] The United States has responded (Civ. Doc. 6, Response), and Riquene has replied (Civ. Doc. 7, Reply).

      Pursuant to 28 U.S.C. § 2255 and Rule 8(a) of the Rules Governing Section 2255 Proceedings[2], the Court has considered the need for an evidentiary hearing and determines that an evidentiary hearing is not necessary to resolve the merits of this action. See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming the facts that

---

[1]    Citations to the record in the underlying criminal case, United States vs. Alfredo Martinez Riquene, Case No. 3:10-cr-227-J-34PDB, will be denoted as "Crim. Doc. __." Citations to the record in the civil § 2255 case, Case No. 3:15-cv-299-J-34PDB, will be denoted as "Civ. Doc. __."

[2]    Rule 8(a) of the Rules Governing Section 2255 Proceedings expressly requires the Court to review the record, including any transcripts and submitted materials, to determine whether an evidentiary hearing is warranted before deciding on a § 2255 motion.

he alleges are true, he still would not be entitled to any relief); Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989) (a petitioner's ineffective assistance claim can be dismissed without an evidentiary hearing when the petitioner alleges facts that, even if true, would not entitle him to relief); Dickson v. Wainwright, 683 F.2d 348, 351 (11th Cir. 1982) ("On habeas a federal district court need not conduct an evidentiary hearing if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel."); Patel v. United States, 252 F. App'x 970, 975 (11th Cir. 2007).[3] For the reasons set forth below, Riquene's Motion to Vacate is due to be denied.

## I.  Background

On January 13, 2011, a grand jury sitting in the Middle District of Florida indicted Riquene on one count of engaging in a commercial sex act with a minor, in violation of 18 U.S.C. § 1591 (Count One), one count of producing child pornography, in violation of 18 U.S.C. §§ 2251(a) and (e) (Count Two), one count of possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count Three), and one count of making false statements to the Federal Bureau of Investigation (FBI), in violation of 18 U.S.C. § 1001 (Count Four). (Crim. Doc. 36, Superseding Indictment). The charges stemmed from the arrest of Riquene for videotaping himself having sex with A.B., an underage female who was working as a prostitute at the time.

Riquene moved to suppress incriminating statements he made to law enforcement officers, arguing that the officers obtained the statements in violation of Miranda v. Arizona,

---

[3]     Although the Court does not rely on unpublished opinions as precedent, they may be cited throughout this Order as persuasive authority on a particular point.  Rule 32.1 of the Federal Rules of Appellate Procedure expressly permits the Court to cite to unpublished opinions that have been issued on or after January 1, 2007.  Fed. R. App. P. 32.1(a).

384 U.S. 436 (1966). (Crim. Doc. 52, Motion to Suppress). United States Magistrate Judge Thomas E. Morris conducted an evidentiary hearing (Crim. Doc. 60, Suppression Hearing Transcript) ("Suppression Tr."), and issued a Report and Recommendation suggesting that the Court deny the Motion to Suppress (Crim. Doc. 68, Report and Recommendation) ("Suppression R&R"). Judge Morris recommended that the Court conclude that Riquene was not in custody when the officers questioned him and that Riquene voluntarily spoke with the officers. After considering objections to the Suppression R&R, the Court adopted Judge Morris's recommendation and denied the Motion to Suppress. (Crim. Doc. 79, Order Adopting Suppression R&R).

Before trial, Riquene moved to sever Count Three (Crim. Doc. 71) and the United States moved to dismiss Count One (Crim. Doc. 118). The Court granted both motions (Crim. Doc. 77, Crim. Doc. 119), such that Riquene proceeded to trial only on Counts Two and Four of the Superseding Indictment (for production of child pornography and making false statements to the FBI).[4] After a three-day trial, the jury found Riquene guilty of both charges. (Crim. Doc. 140, Jury Verdict).

At sentencing, the Court calculated Riquene's total offense level under the United States Sentencing Guidelines to be 38, and his Criminal History Category to be I, yielding an advisory sentencing range of 235 to 293 months in prison. (Crim. Doc. 189, Sentencing Transcript at 16-17) ("Sent. Tr.").[5] The Court ultimately sentenced Riquene to a term of

---

[4]     After Riquene was convicted, the United States moved to dismiss Count Three (Crim. Doc. 151), and the Court granted the request (Crim. Doc. 152).

[5]     Riquene's offense level included an obstruction-of-justice enhancement under U.S.S.G. § 3C1.1 based on false statements he made to the FBI that A.B. had never been inside his home and that he had never had sex with her. Id. at 14-16. The Court sustained the enhancement over Riquene's objection. Id. at 14-15.

235 months in prison, followed by concurrent terms of 10 years of supervised release for each conviction. (Crim. Doc. 166, Judgment).

Riquene filed a timely appeal, in which he argued (1) that the Court erred in denying his Motion to Suppress; (2) the Court violated his right to due process by preventing him from presenting a mistake-of-age defense; (3) the Court erred in admitting videos of him having sex with two adult women; and (4) the Court erred in applying the § 3C1.1 obstruction-of-justice enhancement. United States v. Riquene, 552 F. App'x 940, 941-46 (11th Cir. 2014). The Eleventh Circuit Court of Appeals rejected every argument and affirmed Riquene's conviction and sentence. Id. The United States Supreme Court denied Riquene's petition for certiorari review. Riquene v. United States, 134 S. Ct. 2683 (2014).

## II. Riquene's Motion to Vacate

On March 2, 2015, Riquene timely filed the instant Motion to Vacate. In it, he raises five claims of ineffective assistance of counsel: (1) that counsel was ineffective for failing to argue that the Court improperly shifted the burden of proof to Riquene to show that he did not consent to officers entering his home without a warrant; (2) counsel failed to cite controlling authority in support of the argument that the officers violated Riquene's Miranda rights; (3) counsel failed to argue that 18 U.S.C. § 2251(a) includes a mens rea requirement with respect to the victim's age; (4) counsel failed to argue that § 2251(a) was unconstitutional as applied to him because Riquene "reasonably attempted to ascertain the prostitute's age," and (5) alternatively, counsel failed to appreciate the strict liability nature of the production offense, and was therefore ineffective for not pushing Riquene to enter an open guilty plea to the production charge.

Shortly after filing the Motion to Vacate, Riquene filed a "Motion to Amend § 2255 Motion to Vacate" (Civ. Doc. 5, Motion to Amend), in which he sought to raise a sixth claim of ineffective assistance. Riquene asserts that trial counsel "was ineffective for not allowing [Riquene] to testify on his own behalf in front of the jury during trial." Id. at 1.[6]

## III.    Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal custody may move to vacate, set aside, or correct his sentence. Section 2255 permits such collateral challenges on four specific grounds: (1) the imposed sentence was in violation of the Constitution or laws of the United States; (2) the court did not have jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum authorized by law; or (4) the imposed sentence is otherwise subject to collateral attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims, and claims of error that are so fundamentally defective as to cause a complete miscarriage of justice will warrant relief through collateral attack. United States v. Addonizio, 442 U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

As with any Sixth Amendment ineffective assistance of counsel claim, a § 2255 petitioner must demonstrate both: (1) that his counsel's conduct amounted to constitutionally deficient performance, and (2) that his counsel's deficient performance sufficiently prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984);

---

[6]    The Motion to Amend is due to be granted.

<u>Weeks v. Jones</u>, 26 F.3d 1030, 1036 (11th Cir. 1994). In determining whether the petitioner has satisfied the first requirement, i.e. that counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. <u>Weeks</u>, 26 F.3d at 1036. The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." <u>Id.</u> To satisfy the second requirement, that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. <u>Id.</u> at 1036-37 (citing <u>Strickland</u>, 466 U.S. at 694). In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. <u>Strickland</u>, 466 U.S. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." <u>Id.</u> at 697; <u>see also</u> <u>Wellington v. Moore</u>, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

## A. Ground One

Riquene's first claim is that counsel was ineffective for failing to argue that "the District Court Unlawfully Shifted the Burden of Proof from the Government to Riquene Regarding Consent for the Warrantless Search and Seizure of his Home, in Violation of the Fourth Amendment." Motion to Vacate at 2. Counsel had no occasion to argue that the Court shifted the burden of proof on the matter of Riquene's consent to search, because he never argued that an unreasonable search had occurred in the first place. Rather,

counsel moved to suppress Riquene's statements on the ground that his rights under Miranda and the Fifth Amendment were violated. Motion to Suppress at 3-4. The Court therefore construes Ground One as a claim that counsel was ineffective for not moving to suppress Riquene's statements on the ground that they were the product of a nonconsensual warrantless entry into his home, in violation of the Fourth Amendment.

A prisoner can prove that counsel gave ineffective assistance if his lawyer unreasonably failed to move to suppress evidence. Kimmelman v. Morrison, 477 U.S. 365, 374-75 (1986). To do so, the prisoner must show three things: (1) that a Fourth Amendment violation actually occurred, (2) that it was objectively unreasonable for counsel not to file the motion to suppress, and (3) that there is a reasonable probability the outcome would have been different absent the excludable evidence. See id. at 375, 382. "If a search was constitutional, then counsel is not obligated to move to suppress the evidence . . . and a defendant is not prejudiced by counsel's failure to do so." Castillo v. United States, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing Kimmelman, 477 U.S. at 375).

Here, Riquene cannot satisfy Kimmelman's first prong, i.e., that an unreasonable search and seizure occurred in the first instance. The record of the suppression hearing reflects that while the officers entered Riquene's home without a warrant, they did so with Riquene's voluntary consent. "A consensual search is constitutional if it is voluntary; if it is the product of an 'essentially free and unconstrained choice.'" United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973)). Voluntariness is determined on a case-by-case basis according to "the totality of the circumstances." United States v. Blake, 888 F.2d 795, 798 (11th Cir. 1989) (citing Schneckloth, 412 U.S. at 224–25). "Relevant factors include the 'voluntariness of the

defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found.'" United States v. Spivey, 861 F.3d 1207, 1213 (11th Cir. 2017) (quoting United States v. Chemaly, 741 F.2d 1346, 1352 (11th Cir. 1984)).

On the day of the search, A.B. led law enforcement officers to Riquene's residence, where the officers arrived in an unmarked pickup truck and wearing civilian clothes. Suppression R&R at 3-4 (transcript citations omitted). Two of the four officers who arrived were unarmed, while the other two kept their weapons concealed. Id. at 5. The officers first encountered Riquene's uncle, Jose Mendez, on the front porch. The officers presented their identification badges to Mendez and notified him that they were there to speak with Riquene. Id. Mendez went inside the house to retrieve Riquene while the officers waited outside. Id. When Riquene appeared, one of the officers – Detective Bisplinghoff – showed his credentials to Riquene and identified the others with him as law enforcement officers. Detective Bisplinghoff asked Riquene if he would be willing to speak with them in private, and Riquene agreed, signaling for the officers to come into the living room. Id. at 5-6. Riquene sat on the couch while the other officers sat or stood nearby. Id. at 6. Mendez remained on the porch while the officers spoke to Riquene, during which time "he heard no loud sounds, shouts or threats from inside the residence." Id. The officers advised Riquene that lying to a federal agent is a crime, and began to question Riquene about A.B. Id. Although Riquene is a native of Cuba, id. at 3, he spoke with the officers in English, id.

8

at 7.[7] At some point during the conversation, Detective Bisplinghoff asked for Riquene's permission to inspect the bedroom, which Riquene granted. Id. at 6. Detective Bisplinghoff examined the bedroom and noticed several features that matched the description A.B. had given: an air freshener above the door, a number of hats hanging on the wall, and Riquene's business card for his landscaping company. Id. at 6-7. At this point, Detective Bisplinghoff began to believe there may be probable cause to arrest Riquene. Id. at 7.

Not long thereafter, Detective Maria Carney arrived. Id. at 8. Detective Carney advised Riquene of his Miranda rights in Spanish, and Riquene indicated his understanding of each of his rights. Id. Riquene proceeded to re-answer essentially the same questions that the officers had asked before he was Mirandized. Id. Riquene further gave officers permission to search his room "and signed a consent to search form after Detective Carney explained the English written form to [Riquene] in Spanish." Id. at 9. Riquene also agreed to allow the officers to photograph his bedroom. Id. Throughout this time, the officers did not put Riquene in restraints or restrict his freedom of movement. See id. at 9, 10-11; Suppression Tr. at 24, 87-88, 103. The officers only put Riquene in custody after Detective Carney left the premises. See Suppression R&R at 9, 11.

The foregoing facts show that no Fourth Amendment violation occurred because Riquene consented to the officers entering and searching his home. Indeed, Riquene invited the officers to come into his living room and permitted Detective Bisplinghoff to inspect his bedroom. For many of the same reasons why this Court and the Eleventh Circuit found no Miranda violation, there was also no unreasonable search and seizure. See Suppression R&R at 9-21; Riquene, 552 F. App'x at 941-43. First, Riquene was not

---

[7]    Additionally, Riquene's business card was printed in English, as were the articles of incorporation for the landscaping business he owned. Id. at 7 & n.7.

in custody when he consented to the officers entering his home and examining his bedroom. Spivey, 861 F.3d at 1213. Riquene was not handcuffed at the time and he remained free to move around the home. Suppression R&R at 11; Riquene, 552 F. App'x at 942. Second, the officers did not use overbearing or coercive tactics. Spivey, 861 F.3d at 1213. "The officers wore civilian clothes, did not display any weapons, and did not use force against Riquene." Riquene, 552 F. App'x at 942. Third, Riquene's level of cooperation was high, as he gestured for the officers to enter his living room, answered their questions, and permitted the officers to search and photograph his bedroom. Fourth, even after Detective Carney read Riquene his Miranda rights and the consent-to-search form in Spanish, and he indicated his understanding of each of his rights, he still authorized the officers to search his room. See Spivey, 861 F.3d at 1213 (the defendant's awareness of his rights is a factor in the consent analysis). Moreover, although Riquene's first language is Spanish, he demonstrated fluency in English, as reflected by his conversation with the officers in English (before Detective Carney's arrival) and by the fact that his business card was also in English. Additionally, Riquene is of reasonable intelligence, as reflected by the fact that he worked in Cuba as a police officer and a member of the military, had a driver's license, and incorporated his own lawn company. Suppression R&R at 3. Finally, although Riquene contends that he was on pain medication at the time and that this diminished his ability to give consent, the testimony from the suppression hearing reflected that Riquene was mentally alert at all times. See id. at 20.

Based on the foregoing, the Court finds that the record establishes that Riquene consented to the officers entering and searching his home, and further, that such consent was knowing and voluntary. Because a consensual search is constitutional, Purcell, 236

F.3d at 1281, Riquene cannot meet <u>Kimmelman</u>'s first prong, which requires that he establish the existence of a Fourth Amendment violation, 477 U.S. at 375. As such, relief on Ground One is due to be denied.

## B. Ground Two

Riquene's second ground is that counsel gave ineffective assistance "by Failing to Argue Controlling Supreme Court Authority regarding Riquene being Interrogated without his Miranda Rights in Violation of the Fifth Amendment." Motion to Vacate at 2. Specifically, Riquene argues that counsel should have cited <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), in which a plurality held that the deliberate tactic of administering <u>Miranda</u> warnings after beginning a custodial interrogation does not render a post-<u>Miranda</u> confession admissible. Motion to Vacate at 3.

Ground Two lacks merit, first and foremost, because the record refutes it. During the suppression hearing, trial counsel expressly argued that the police used an improper question-first, <u>Mirandize</u>-later interrogation tactic, in violation of <u>Seibert</u>. Suppression Tr. at 127. Then, on direct appeal, Riquene's opening brief shows that appellate counsel also argued that Riquene's interrogation was unlawful under <u>Seibert</u>. Brief for Appellant at 31-37, <u>United States v. Riquene</u>, 552 F. App'x 940 (11th Cir. 2014) (No. 13-10034), 2013 WL 1790898, at *31-37. Thus, trial counsel and appellate counsel did in fact raise the arguments that Riquene claims they omitted. Next, even if counsel had failed to cite <u>Seibert</u> or other "controlling" authorities, he was not prejudiced because there was no <u>Miranda</u> violation in the first instance. As the Eleventh Circuit held on direct appeal, Riquene was not in custody when the officers questioned him, and as such, the officers were not required to give him <u>Miranda</u> warnings. <u>Riquene</u>, 552 F. App'x at 941-43. Finally, and

perhaps most importantly, the Eleventh Circuit explicitly rejected Riquene's reliance on Seibert as "misplaced." Id. at 943. As the Eleventh Circuit explained,

> [In Seibert, 542 U.S. 600], the Supreme Court considered "a police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession," after which the officer provides Miranda warnings and the suspect repeats his pre-Miranda statement. Id. at 604, 124 S. Ct. 2601. In contrast, as discussed above, Riquene was not in custody before he was advised of his rights under Miranda. Accordingly, we affirm the denial of Riquene's motion to suppress.

Riquene, 552 F. App'x at 943. As such, the record shows that Riquene's counsel did not perform deficiently by purportedly failing to cite controlling authority, and in any event, Riquene did not suffer prejudice. Relief on Ground Two is thus due to be denied.

## C. Grounds Three and Four

In Ground Three, Riquene contends that counsel was ineffective because he failed to argue that 18 U.S.C. § 2251(a), which prohibits the production of child pornography, imposes a mens rea requirement with respect to the victim's age.[8] Motion to Vacate at 4-5. In Ground Four, Riquene argues that counsel was also ineffective for failing to argue that § 2251(a) was unconstitutional as applied to him because Riquene "Reasonably Attempted to Ascertain the Prostitute's Age," and "the Fifth Amendment Due Process Clause requires that Riquene be given an opportunity to present an affirmative defense based on mistake of age." Id. at 5.

On direct appeal, the Eleventh Circuit rejected the very premises underlying Grounds Three and Four, i.e., that § 2251(a) contains a mens rea requirement and that

---

[8]     Riquene does not specify what mens rea would be required, but he seems to suggest that knowledge (as opposed to negligence or recklessness) is necessary.

12

Due Process required Riquene to be able to present a mistake-of-age defense. Riquene, 552 F. App'x at 943-44. As the court explained, "knowledge of the victim's age is not an element of § 2251 and 'the Constitution does not mandate a mistake of age defense under § 2251.'" Id. (quoting United States v. Deverso, 518 F.3d 1250, 1257-58 (11th Cir. 2008)). Because knowledge of the victim's age is not an element of the offense – nor does the Constitution require it to be – Riquene had no right to present "evidence relating to his perception of the victim's age." Id. at 944. Moreover, the Fifth and Sixth Amendments gave Riquene no right to present a mistake-of-age defense.

> The Fifth and Sixth Amendments "require criminal convictions to rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." United States v. Gaudin, 515 U.S. 506, 509–10, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). That Riquene's jury was not asked to consider a fact that is not an element of the charged crime does not violate this principle.

Riquene, 552 F. App'x at 944.

Riquene's claims in Grounds Three and Four are a thinly-veiled effort to relitigate the same mistake-of-age arguments that the Eleventh Circuit rejected on direct appeal. "The district court is not required to reconsider claims of error that were raised and disposed of on direct appeal. '[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255.'" United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (internal citations and quotation marks omitted). Moreover, a petitioner cannot avoid this bar merely by recasting previously-rejected claims under a different legal theory. Id. (citing Cook v. Lockhart, 878 F.2d 220, 222 (8th Cir. 1989)). See also United States v. Michaud, 901 F.2d 5, 6 (1st Cir. 1990) (per curiam) (dismissing claims raised in a § 2255 motion because they were "decided on direct appeal and may not be relitigated under a different label on collateral

review"). Thus, "[i]t is settled law that a petitioner may not revive claims already decided on direct appeal by cloaking them in 'ineffective assistance of counsel' garb in a § 2255 petition." Dowdell v. United States, 859 F. Supp. 2d 176, 179 (D. Mass. 2012).

Because the Eleventh Circuit has already rejected Riquene's underlying mistake-of-age arguments, his efforts to relitigate those claims under the guise of ineffective assistance of counsel are due to be rejected. Accordingly relief on Grounds Three and Four is due to be denied.[9]

### D. Ground Five

In Ground Five, Riquene argues that counsel failed to understand the strict liability nature of the § 2251(a) charge (for production of child pornography), and as such, counsel was ineffective for not "Pressing an Open Guilty Plea for a Reduced Sentence with Acceptance of Responsibility under USSG [§] 3E1.1." Motion to Vacate at 5. Riquene argues that once the Court ruled that he could not present a mistake-of-age defense, "there was nothing to be gained by continuing through trial" because the United States had a video of Riquene engaging in sex with A.B. Id. at 6. Thus, counsel should have urged Riquene to "simply enter[ ] an open guilty plea … to only the charge of 18 U.S.C. [§] 2251(a) – as explicitly offered by the United States before trial." Id. Riquene argues that had he pled guilty to only the § 2251(a) charge, he would have received credit for

---

[9]     The Court also notes that, contrary to Riquene's allegations, counsel did argue that 18 U.S.C. § 2251(a) requires the government to prove that the defendant knew the victim's age, that the statute was unconstitutional (facially and as-applied) absent a mens rea requirement with respect to age, and he stated his intent to raise a mistake-of-age defense. (Crim. Doc. 84, Motion to Dismiss Count II of Superseding Indictment). However, the Court rejected the motion. (See Crim. Doc. 124, Order Denying Motion to Dismiss Count II). The Court further ruled that a mistake-of-age defense would be irrelevant and inadmissible because knowledge of the victim's age is not an element of the offense. Id. at 11-12. Thus, counsel actually did pursue a mistake-of-age defense and argued that the statute was unconstitutional; he was simply unsuccessful in that regard.

acceptance of responsibility and had a guidelines sentencing range of 168 to 210 months, as opposed to the 235-to-293 months range that was his ultimate guidelines range. Id. at 7. Because the Court sentenced him to the low end of his guidelines range (235 months), Riquene argues that the Court likely would have sentenced him to the § 2251(a) mandatory minimum (180 months), resulting in a sentence 55 months lower than his current term of imprisonment. Id. Although Riquene faults counsel for not "pressing" him to enter an open guilty plea, he does not allege that he actually would have entered such a plea. Indeed, the record from the criminal proceedings refutes any suggestion that Riquene would have entered an open guilty plea to the § 2251(a) charge.

The Strickland standard applies to ineffective assistance of counsel claims arising out of the plea process, including to the negotiation and consideration of pleas that are rejected or lapse. Osley v. United States, 751 F.3d 1214, 1222 (11th Cir. 2014). "Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution." Diaz v. United States, 930 F.2d 832, 834 (11th Cir. 1991). In the context of a rejected plea offer, the prejudice prong requires the movant to show a reasonable probability that but for counsel's ineffectiveness:

> (1) "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."

Osley, 751 F.3d at 1222 (quoting Lafler v. Cooper, 566 U.S. 156, 164 (2012)). However, "after the fact testimony concerning [the movant's] desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." Diaz, 930 F.2d at 835.

At the outset, the Court notes that contrary to Riquene's allegation, his inability to present a mistake-of-age defense did not render going to trial pointless. Riquene had other defenses available to the § 2251(a) charge, which he pursued at trial. The United States charged Riquene with employing a minor "to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct." (Superseding Indictment at 1-2). Riquene presented the defense that, while he admittedly hired A.B. for sex, he did not do so for the purpose of producing a visual depiction thereof. (See Crim. Doc. 187, Trial Transcript Volume III at 25, 30-31, 35-40). Riquene pointed to the fact that he had hired A.B. for sex on several occasions, which he suggested revealed his true motive in hiring her: for sex only, but not for the purpose of producing a recording. See id. at 37-38. Riquene also highlighted the fact that, according to the FBI's digital forensics examiner, there was no evidence that the video recording of Riquene and A.B. having sex had ever been replayed or transmitted on his computer. (Crim. Doc. 186, Trial Transcript Volume II at 149-50); Trial Tr. Vol. III at 40. That, Riquene suggested, also showed that he did not hire A.B. for the purpose of producing child pornography. Trial Tr. Vol. III at 39-40. The jury ultimately rejected Riquene's theory, but it does not change the fact that Riquene still had available defenses at trial.

Nevertheless, even assuming counsel performed deficiently by failing to advise Riquene to enter an open guilty plea to the § 2251(a) charge, Riquene was not prejudiced. The record proves that Riquene would not have been willing to plead guilty to the § 2251(a) charge, which carried a 15-year mandatory minimum, see 18 U.S.C. § 2251(e). Indeed, the record shows that Riquene was unwilling to plead guilty to an offense that involved an even lower 10-year mandatory minimum.

On or about January 10, 2012, Riquene filed a pro se "Ex Parte Application to Dismiss Counsel." (Crim. Doc. 97) (Under Seal). The Court convened a hearing on the matter on January 13, 2012. (Crim. Doc. 183, Motion Transcript) ("Mot. Tr."). As counsel relayed to the Court, "the thrust of [Riquene's] complaints" was that counsel had failed to obtain a better plea offer. Id. at 4, 10. Other defendants had received plea offers involving less than a 10-year mandatory minimum, and Riquene wanted a similar deal. Id. at 4. Riquene was frustrated that the United States had not offered him a similar plea agreement. Id. The prosecutor offered some additional background information:

> MR. HEAVENER: … Mr. Bell [Riquene's trial counsel] has repeatedly requested the government to entertain a lower plea offer. Mr. Riquene, as he is charged, he will be facing a 15-year minimum mandatory on the production of child pornography count. The government had indicated to Mr. Bell that we would be willing to allow him to plea[d] to the human trafficking count, which is a ten-year minimum mandatory.
>
> The government will not allow Mr. Riquene to plea[d] to anything below that ten-year minimum mandatory, and that's the offer that was on the table. My understanding is Mr. Riquene has declined that offer, and that is why we're going to trial.

Id. at 13. The United States proposed to leave the plea offer open for Riquene and his counsel to discuss, but cautioned that Riquene would "not be getting an agreement from the United States to go below the ten-year minimum mandatory." Id. Riquene responded that the prosecutor was "being very unjust" with him, id. at 14, suggesting that he thought a 10-year mandatory minimum was unfair. The Court then recessed to allow Riquene and counsel to speak in private, id. at 15, after which Riquene stated that he wanted to retain trial counsel, id. at 16. Significantly though, during the recess, the United States had "an opportunity to revisit" the plea deal with Riquene, but Riquene reiterated that he did not

want to enter a plea and that he wanted to proceed to trial. Id. at 17. Riquene did not dispute the prosecutor's account. As such, the United States withdrew the plea offer. Id.

The foregoing shows that Riquene was not satisfied with the United States' plea offer, and that he was simply unwilling to plead guilty to an offense carrying a 10-year mandatory minimum sentence or greater. As such, there is no reasonable probability that Riquene would have pled guilty to the § 2251(a) charge, which carried an even higher 15-year mandatory minimum. Because the record shows there is no reasonable probability that "the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea…)," Osley, 751 F.3d at 1222 (quoting Lafler, 566 U.S. at 164), Riquene cannot satisfy Strickland's prejudice prong. Therefore, relief on Ground Five is due to be denied.

### E.  Ground Six: The Motion to Amend (Civ. Doc. 5)

As his sixth ground, Riquene asserts that counsel gave ineffective assistance by preventing him from testifying. Motion to Amend at 1. Riquene alleges that had he taken the stand, he would have testified that A.B. showed him an ID suggesting that she was 18 years old, that he met her at a strip club where only women at least 18 years old could work, that he did not know she was a minor, and that he would not have had sex with her had he known she was underage. Id. at 1-2.

"[T]he appropriate vehicle for claims that the defendant's right to testify was violated by defense counsel is a claim of ineffective assistance of counsel under Strickland...." Teague, 953 F.2d at 1534. Counsel performs deficiently with respect to the defendant's right to testify where counsel "has refused to accept the defendant's decision to testify and refused to call him to the stand, or where defense counsel never informed the defendant

18

of his right to testify and that the final decision belongs to the defendant alone." Gallego v. United States, 174 F.3d 1196, 1197 (11th Cir. 1999). As with all Strickland claims, however, it is not enough only to show deficient performance. The petitioner must also show that there is a reasonable likelihood the outcome of the trial would have been different had he given his testimony. See Miller v. United States, 562 F. App'x 838, 843-44 (11th Cir. 2014) (movant failed to show he was prejudiced by counsel's failure to advise him of the right to testify where there was significant incriminating evidence); Pedron v. United States, 507 F. App'x 892, 894-95 (11th Cir. 2013) (movant was not entitled to an evidentiary hearing on claim that counsel failed to inform him of right to testify where movant did not allege that he would have testified "and there was sufficient evidence to convict him, regardless of whether he testified.").

As an initial matter, the record casts doubt on whether counsel refused to allow Riquene to testify. Before trial, the Court advised Riquene as follows:

THE COURT: . . . By the same token – and I'm going to talk to you about this now and I won't talk to you about it again – you have the right to testify and you also have the right not to testify. That choice is entirely yours. You should confer with your attorney, and you should certainly listen to his advice, but at the end of the day, you have to decide whether you want to testify or not.

Do you understand that?

DEFENDANT: Yes.

THE COURT: So if at the end of the case your attorney announces that he rests and you haven't taken the stand, then I'm going to understand it was your decision not to testify.

Is that fair?

DEFENDANT: Yes.

(Crim. Doc. 184 at 47-48). At the end of the defense's presentation, when counsel announced that the defense was resting, Riquene made no objection about not having testified. See Trial Tr. Vol. II at 162. Thereafter, the Court and the attorneys discussed jury instructions applicable when the defendant does not testify, and Riquene voiced no concern about the fact that he had not taken the stand. Id. at 191-92. The next day, shortly before closing arguments, counsel told the Court that "potentially Mr. Riquene would have testified about his understanding of Alyssa's age. But we didn't based on the Court's rulings [that he could not present a mistake-of-age defense]." Trial Tr. Vol. III at 11. Riquene did not contradict counsel's statement. The record therefore suggests that Riquene and counsel made a joint decision that he would not testify because his testimony would not have been admissible, not that Riquene wished to testify and counsel prevented him from doing so.

Nevertheless, even assuming that counsel prevented Riquene from testifying, he did not suffer prejudice. The testimony Riquene would have given was inadmissible because it pertained entirely to an invalid mistake-of-age defense. Riquene would have testified that (1) A.B. showed him an ID indicating she was 18 years old; (2) he met A.B. at a strip club where only adults can work; (3) he had no idea A.B. was a minor; and (4) had he known A.B. was a minor, he would not have had sex with her. Motion to Amend at 1. All of this testimony would have been irrelevant and misleading, however, because 18 U.S.C. § 2251(a) does not have a mens rea requirement with respect to the victim's age. Riquene, 552 F. App'x at 943-44; Deverso, 518 F.3d at 1257-58. Riquene's proffered testimony therefore could not lawfully have affected the verdict. Accordingly, Riquene has

not shown a reasonable probability that had he taken the stand, the jury would have acquitted him. Relief on this ground is therefore due to be denied.

### IV.  Certificate of Appealability Pursuant to 28 U.S.C. § 2253(c)(1)

If Riquene seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. This Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Riquene "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335–36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, this Court will deny a certificate of appealability.

As such, and in accordance with the Rules Governing Section 2255 Cases in the United States District Courts, it is hereby

**ORDERED**:

1. Petitioner Alfredo Martinez Riquene's Motion to Amend (Civ. Doc. 5) is **GRANTED**.

2. Riquene's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C. § 2255 (Civ. Doc. 1), as amended, is **DENIED**.

3. The Clerk shall enter judgment in favor of the United States and against Alfredo Martinez Riquene, and close the file.

4. If Riquene appeals the denial of the petition, the Court denies a certificate of appealability. Because this Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida this 23rd day of January, 2018.

MARCIA MORALES HOWARD
United States District Judge

Lc19

Copies:

Counsel of Record

Pro se petitioner